## Jesse v. Commonwealth.

(Decided January 13, 1922.)

### Appeal from Carter Circuit Court.

Criminal Law—Trial.—Evidence, instructions and argument of counsel for the Commonwealth, complained of on trial for murder, examined and trial held to be free of error prejudicial to defendant's substantial rights.

G. W. E. WOLFORD, H. R. DYSARD and A. J. COUNTS for appellant.

CHAS. I. DAWSON, Attorney General, and T. B. McGREGOR, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

On April 14, 1921, the defendant shot and killed Jarvey Newsom, for which he was convicted and sentenced to the penitentiary for fifteen years. For a reversal of that judgment he complains that the court committed prejudicial error in the admission of incompetent evidence and in an instruction given; and that the Commonwealth's attorney's argument to the jury was improper and prejudicial.

The evidence is in substance as follows: For a month or six weeks before the homicide Newsom, Crit Hall and Homer Hensley were engaged in operating a "moonshine still" near the homes but not on the lands of defendant and his brother, Logan Jesse, in Carter county. The Jesse brothers were intimate friends of Newsom and his associates and their regular patrons if not their partners in the illegal business. Newsom, Hall and Hensley if they did not board with the Jesses were guests in their homes much of the time, day and night, when they were not operating the still. The day before the killing the Jesse brothers took their tobacco to Grayson for the purpose of selling it, but, owing to the crowd-

ed condition of the market, were unable to sell it that day. Leaving the tobacco in Grayson they returned to their homes that night, reaching there about eight p. m. When George Jesse entered his home he found his wife in bed and Newsom, Hall, Hensley and Annie Hall, defendant's stepdaughter, sitting by the fire in the same room. Newsom was quite drunk, and in just a few minutes Logan Jesse came in, grabbed Newsom, shook him and demanded to know why he had mistreated his wife in his absence. Newsom was too drunk to offer any explanation and Crit Hall suggested that Jesse wait until the morning to talk to him about the matter, to which Logan seems to have agreed. As he was about to leave the room the defendant asked him what was the matter, and he replied that if he would ask his own wife he would probably find out from her. Shortly thereafter Newsom, Crit Hall and Hensley left defendant's home and went to the home of Mrs. Liza Bentley, where they stayed all night. Just after they had eaten breakfast there the next morning the defendant and his brother Logan rode up to the gate in front of the house and asked if Newsom, Hall and Hensley were there, and upon being told that they were they said that they wanted to see them. In a few minutes Newsom, Hall and Hensley, together with Wes Johnson and possibly others who were in the house, came out and walked down to the gate where George Jesse was still seated upon his horse, but Logan Jesse had dismounted and was standing by the fence. After all the parties had spoken Logan asked Newsom and Hall if they had any whiskey, and being told that they had not asked Hall for a cigarette. At about this time and without any apparent reason George Jesse pulled a revolver out of his pocket and began shooting at Newsom; Newsom dodged and then started to run back towards the house; the first shot missed him but he stumbled and fell and while he was down on his all fours, with his back to the defendant, a second shot struck him in the buttock and ranging upward, penetrated his bladder and intestines, and from this shot, which was the only one that struck him, he died the next day. After being shot, however, Newsom scrambled to his feet and ran to the corner of the house, from which place he and the defendant shot at each other several times.

The decided weight of the evidence is that Newsom did not draw or attempt to draw his pistol or make any

hostile demonstration whatever until after he had been shot and had retreated to the house.

The defendant, however, in which he is partially corroborated by his brother, testified that the decedent came out of the house with his hand on his pistol and some kind of an expression upon his face which the defendant resented.

With reference to what actually happened at the homes of George and Logan Jesse the day before the killing, Mrs. Logan Jesse and Annie Hall testified 'that Newsom, Crit Hall and Hensley came to Logan's house in the afternoon with some moonshine whiskey, of which all parties partook, and that Newsom attempted to rape first Miss Hall and then her mother, Mrs George Jesse; that about dark all parties except Mrs. Logan Jesse went to the home of George Jesse, about three or four hundred yards distant, and that Mrs. George Jesse went to bed with a sick headache and without preparing any supper. Hall and Hensley state that Mrs. George Jesse became intoxicated and for that reason went to bed, and they deny Newsom attacked or behaved improperly toward either defendant's wife or his stepdaughter.

The court submitted to the jury the question of self-defense, as was doubtless proper, although such was not the defendant's real defense, as will be seen from his own statements given below and as his counsel admits. He claims, rather as an excuse than in justification of his action, that during his absence from home the day before Newsom, after giving his wife and stepdaughter whiskey, had attempted to rape each of them; that upon learning of this from his wife and stepdaughter he became greatly excited and was unable to eat or sleep; that he went by Mrs. Bentley's, which was off his road to Grayson, simply to tell Newsom not to go about his house during his absence, but that when Newsom came out of the house "he had a gun sticking there under his belt; he had on a sweater open in front around that side and the rest of it closed; the gun was sticking out like this; his hand was on the gun; his sweater was bulged down or sticking over his pants; you could see the nickle part of the gun; I spoke, 'good morning, boys;' they spoke; Newsom did not speak until he had got about four feet from the fence. When Wes Johnson and him got down there he forced a disagreeable grin on his face; he made me believe the way he had his hand on that gun that if I spoke he would

use the gun; I had a gun in my front pocket, the left one; I was riding that morning; I changed my hand and I know he seen me change my hand from my pocket and draw the gun as he turned; he pulled the gun and made for the chimney; he got to the chimney and got behind it and looked out around the corner and shot at me." He was then asked and answered: "Q. What effect did it have on you to see him come out there in that attitude? A. I could hardly tell you, I just shook and I could hardly see and I just turned blind. Q. Was you able to control the desire to kill the man who had mistreated your wife? A. No, sir, I wasn't."

Without objection by either party both sides went fully and to great length into whether or not the defendand and his brother Logan were partners with Newsom, Hall and Hensley in the operation of the distillery. Hall and Hensley testified that they were partners, the Jesses denying that they were interested in any way in the business.

The first objection urged for reversal is the admission of the evidence for the Commonwealth to the effect that the defendant was interested in this business, it being insisted that it was highly prejudicial to admit evidence that he was guilty of a crime other than that for which he was being tried.

But even if it be admitted that this evidence was not competent under the circumstances, a question we need not decide, the defendant cannot now complain of its admission since he not only did not object thereto but introduced much of it himself.

The only other evidence complained of is the statement of Fred Reed that the defendant some time before the killing had brutally whipped his stepson. This evidence ordinarily would have been incompetent and its introduction prejudicial, but introduced in the manner in which it was the defendant is not in a position to complain thereof.

After the defendant had introduced his testimony the Commonwealth in rebuttal introduced witnesses who testified that the defendant's general reputation for morality was bad, among whom was Fred Reed. After he had been asked by the attorney for the Commonwealth and had testified as to the defendant's reputation counsel for the defendant insisted upon the witness telling whom he had heard talk about defendant and what they had said about him indicating that his reputation was bad.

Thus pressed the witness stated that among other things he had heard several neighbors discuss unfavorably the whipping he had given his stepchild.

On redirect examination the attorney for the Commonwealth asked the witness what sort of whipping the defendant had given the child and in response, after the defendant's objection had been overruled and he had saved an exception, the witness said that it was a brutal whipping.

It will therefore be seen that the whole question of the whipping was brought out and introduced into the evidence by the defendant himself and we do not think that the court erred in thereafter permitting the attorney on the other side to show the character of the whipping and we are quite sure that under the circumstances its admission was not prejudicial.

This is all the evidence to which objection is made and clearly a reversal cannot be ordered because of its admission under the circumstances.

It is next insisted that the court misinstructed the jury upon the question of insane impulse, which was, as is admitted by his counsel, the defense upon which defendant really relied. It will be noticed, however, that even in presenting this defense the defendant made no claim that he did not know what he was doing when he shot the deceased, or was in such disturbed mental condition that he was incapable of knowing what was right and what was wrong. He only states that he was unable to control his desire to kill the deceased, not as a result of an insane impulse induced by the information and belief that deceased the day before had mistreated his wife and stepdaughter, but rather because deceased at the time, with his hand on his pistol, forced a grin on his face which made defendant believe deceased would shoot him if he said anything.

Assuming, but not deciding that such evidence, accompanied only by proof that the defendant had cried, spent a sleepless night and refused to eat after having been told of the matter by his wife and stepdaughter, and had put a saddle on his horse without a blanket when he left home that morning, but seemed cheerful thereafter and spoke pleasantly to deceased just before shooting him, is sufficient evidence to constitute any kind of a defense to a charge of murder, the question was submitted to the jury in substantial accord with the evidence and

substantially, though not in the usual form where temporary insanity is proven. We are, therefore, of the opinion that there is no merit in this contention.

The statements made by the Commonwealth's attorney to the jury, of which complaint is made, are thus stated in the bill of exceptions: "I do not blame her for telling a story to help (referring to what defendant's wife had told him about deceased), also that he cruelly beat her offspring; the evidence showed that he did cruelly beat her child." "I told you in my statement that we would show that the Jesses were engaged in this moonshine business and we have proved it."

Since we have already held that the evidence with reference to these two matters was not erroneously admitted it follows that the references thereto by the Commonwealth's attorney in his argument to the jury were not improper, unless the evidence admitted did not warrant the statements made, and this is not true, nor does counsel so contend.

Wherefore the judgment is affirmed.